UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

I/O TEST, INC.,

    Plaintiff/Counter-Defendant,                    Case No. 1:06-CV-117

v.                                                                           HON. GORDON J. QUIST

SMITHS AEROSPACE, INC.,

    Defendant/Counter-Plaintiff.
_____/

## OPINION

### Overview

The Court has before it Defendant/Counter-Plaintiff's, Smiths Aerospace, Inc. ("Smiths"), motion to dismiss for failure to participate in discovery and for failure to prosecute pursuant to Federal Rules 37(d) and 41(b) and alternative motion for summary judgment pursuant to Rule 56(c). By Order dated December 15, 2006, the Court dismissed Plaintiff's, I/O Test Inc. ("I/O Test"), action pursuant to W.D. Mich. LCivR 41.1 for failure to prosecute. The Order referenced the November 21, 2006, Order to Show Cause issued by the magistrate judge directing I/O Test to show good cause for its want of prosecution, failure to cooperate with discovery, failure to cooperate with its own counsel, failure to appear at the November 21, 2006, hearing, and failure to obtain new counsel as the basis for the dismissal. Although the December 15, 2006, Order did not so specifically provide, the dismissal was an adjudication on the merits:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). *See Mason v. Ogden Allied Aviation Servs. Corp.*, No. 94-4036, 1995 WL 608166, at *3 (6th Cir. Oct. 16, 1995) (per curiam) (stating that "Rule 41(b) indicates that a

dismissal because of a plaintiff's failure to comply with local court rules is a decision on the merits unless the court otherwise specifies"); *Steward v. City of Jackson*, 8 F. App'x 294, 296 (6th Cir. 2001) (stating that Rule 41(b) permits district courts to enter a *sua sponte* dismissal for failure to prosecute).

Following the entry of the December 15, 2006, Order, the Clerk closed the case, even though the December 15 Order did not dispose of Smiths' counterclaim. Smiths filed the instant motion one day prior to the entry of that Order, on December 14, 2006, seeking dismissal of I/O Test's claims for failure to prosecute and, in the alternative, summary judgment against I/O Test on its claims and summary judgment in favor of Smiths on its counterclaim. Therefore, on December 21, 2006, the Court entered an Order directing the Clerk to reopen the case for the purpose of ruling on Smiths' counterclaim. Because the Court's December 15 Order effectively granted the first prong of Smiths' motion by dismissing I/O Test's claims for failure to prosecute and failure to participate in discovery and effectively granted that portion of Smiths' alternative request for summary judgment on I/O Test's claims, the Court need only address Smiths' counterclaim for breach of contract and misappropriation of trade secrets.

**Facts**

Given the posture of this case, a brief factual synopsis will suffice. Smiths is a global aerospace technology developer of both military and civilian aircraft. I/O Test is a systems integration and consulting firm offering services to both military and commercial customers. Carlos Medina is I/O Test's sole officer, director, and employee.

I/O Test contracted with Smiths to perform work on two unrelated projects. The first project commenced in the beginning of July 2002 and involved the development of certain programs relating to the operation of F-18 fighter jets that were owned by the Canadian Government (the "1796

Project"). In connection with this work, Smiths issued Purchase Order No. 0767535, and the parties signed a Test Program Agreement (together the "1796 Project Agreement"). In October 2003, I/O Test contracted with Smiths to provide system software services relating to the operation and testing of Apache Helicopters owned by the Japanese Government (the "Japanese Project"). In connection with this work, Smiths issued Purchase Order No. 0786909, and the parties signed a Test Program Agreement (together the "Japanese Project Agreement"). Under both Agreements, Smiths retained all copyright and ownership interests in the existing software that Smiths provided to I/O Test and in any resulting software and technology that I/O Test developed pursuant to the Agreements. In addition, the Agreements prohibited I/O Test from using software, technology, or confidential information owned by Smiths for its own purposes or from disclosing the same to third parties.

Pursuant to the 1796 Project Agreement, I/O Test was to deliver the completed hardware converter and the completed software converter to Smiths. Pursuant to the Japanese Project Agreement, I/O Test was required to convert previously existing software developed and owned by Smiths into a new version. In February 2004, I/O Test stopped performing work on both projects. I/O Test essentially abandoned the 1796 Project and, months later, delivered half-completed software to Smiths. Smiths could not use I/O Test's work, although it had paid I/O Test $177,606.00 as of that point. Regarding the Japanese Project, not only did I/O Test not complete the software conversion, it also locked Smiths out of its software so that Smiths could not access it, even though Smiths paid I/O Test the entire contract amount and an additional amount for "out-of-scope" work, totaling $36,626.00. Smiths never received the benefit of any of this work. Importantly, Smiths never took any action to terminate the Agreements.

After I/O Test ceased work on the Projects and wrongfully locked Smiths out of its software, Smiths had to recreate the work involved in the Japanese Project and was forced to solicit new

proposals to begin anew and complete the 1796 Project. Smiths received a proposal for the 1796 Project from Symtx, Inc. of Austin, Texas in the amount of $835,000 – a figure almost 4 times the amount that Smiths had agreed to pay I/O Test. Smiths observed that the Symtx proposal contained confidential and proprietary information that Smiths had created and owned relating to the 1796 Project work performed by I/O Test. After further investigation, Smiths learned that Symtx had contracted with Medina and I/O Test to perform the work on the project if Symtx's proposal was accepted and that it had obtained the confidential information from I/O Test.

## Discussion

I/O Test has failed to respond to Smiths' motion within the allowed time. The Sixth Circuit has held that under these circumstances,

> a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.

*Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (noting that where the nonmoving party has not responded, a court's reliance on facts advanced by the movant is proper and sufficient).

Having reviewed Smith's motion, brief, and supporting materials, the Court concludes that Smiths has met its burden of demonstrating that it is entitled to summary judgment on its breach of contract and misappropriation claims. Among other things, Smiths' evidence includes the 1796 Project Agreement, the Japanese Project Agreement, and the affidavit of Phillip Justice, the Manufacturing Test Engineering Supervisor assigned by Smiths to work on the Projects with I/O Test. This evidence shows that I/O Test breached the Agreements in several ways. With regard to the 1796 Project Agreement, I/O Test unilaterally stopped performance on the project, failed to deliver a finished product, and divulged Smiths' confidential information to a third party. With

4

regard to the Japanese Project Agreement, I/O Test locked Smiths out of its software and unilaterally stopped work on the project, in spite of Smiths having paid I/O Test the entire contract price and an additional amount for out-of-scope work.  These breaches were material.  Smiths did not receive the benefit of its bargain, and it was forced to spend additional sums to obtain replacement services to complete I/O Test's unfinished work.  In addition, Smiths' evidence shows that I/O Test misappropriated Smiths confidential information, in violation of the Michigan Uniform Trade Secrets Act ("MUTSA") by blocking Smiths' access to its own Japanese Project Software and by divulging Smiths' confidential information regarding the 1796 Project to Symtx.

Because Smiths has shown that I/O Test breached the Agreements, it is entitled to recover "those damages that are the direct, natural, and proximate result of the breach."  *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512, 667 N.W.2d 379, 383 (2003).  Here, Smiths seeks to recover a total of $301,748.00, which includes $214,232.00 that Smiths paid I/O Test for its work on the Projects and $87,516.00 that Smiths was required to pay to a third party to maintain the 1796 hardware until a new contractor can perform the work that I/O Test failed to perform.  The Court concludes that these are permissible damages under Michigan law.

In addition, Smiths requests injunctive relief under MUTSA.  That Act provides that a court may enjoin "[a]ctual or threatened misappropriation."  M.C.L.A. § 445.1903(1).  Pursuant to the Agreements, the parties agreed that disclosure and/or misuse of Smiths' confidential information will cause Smiths "immediate and irreparable harm."  The Court concludes that such relief is appropriate in this case.  Therefore, the Court will enjoin I/O Test from using any software or other confidential information that Smiths provided to I/O Test in connection with the two Agreements and will order I/O Test to immediately return to Smiths all such software and confidential information.  Finally, Smiths requests that the Court award it its costs and reasonable attorney fees.  Smiths does not cite

any basis for an award of attorney fees and costs and, based upon its review of the Agreements, the Court has not found any contractual basis for such an award. However, Section 5 of MUTSA provides that "[i]f . . . willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." M.C.L.A. § 445.1905. Based upon the circumstances of this case, the Court concludes that I/O Test's misappropriation of Smiths' software and confidential information and disclosure of such information to a third party was willful and malicious. Therefore, the Court will award Smiths its attorney's fees that were reasonably incurred in connection with Smiths' misappropriation claim.

## Conclusion

For the foregoing reasons, the Court will grant Smiths' motion for summary judgment on its counterclaim for breach of contract and misappropriation. The Court will award Smiths a total of $301,748.00 in damages on its breach of contract claim and will award injunctive relief as set forth above based upon I/O Test's misappropriation. Finally, the Court will award Smiths its reasonable attorney's fees incurred in connection with its misappropriation claim under MUTSA.

An Order consistent with this Opinion will be entered.


Dated: April 27, 2007                          /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE